NELSON *vs.* THE PUBLIC ADMINISTRATOR.

*In the matter of proving the last Will and Testament of* JAMES MATHESON, *deceased.*

AFTER administration granted, four unattested wills, three others apparently duly executed, and several papers of revocation were discovered. The last of the executed wills was proved, and it was *held* that it was not revoked by any of the other instruments which were only subscribed by the testator, but not attested by subscribing witnesses. A revocation, to be valid, must be executed with all the formalities requisite for the due execution of a will. This will is not affected by any written evidence of an intention to revoke, no matter how clearly proved or frequently expressed.

FORSTER & THOMPSON, *for Executors.*
A. B. TAPPAN, *for Public Administrator.*

THE SURROGATE. Letters of administration were issued on the estate of the deceased to the Public Administrator. Subsequently, four unattested wills, three others apparently duly executed, and several papers of revocation, were discovered. The latest of the executed wills is dated February 3, 1840, and that is the instrument now offered for proof. Its execution is formally proved by the depositions of the subscribing witnesses; but it is urged that it has been revoked. Three of the alleged revocations are wills signed but not attested, and three are mere declarations of revocation, subscribed by the testator, but without the names of subscribing witnesses. They run in this way, " I, James Matheson, &c., do hereby abrogate and revoke all testaments, wills, or codicils I have, or might heretofore have made," &c. " I, James Matheson, who have made and wrote and signed the within my last will and testament, do hereby rescind and revoke this my last will and testament, and all or any other wills and testaments or codicils of wills, for-

merly or heretofore made by me," &c. "I hereby rescind and revoke these my last wills and testaments, or any other wills and testaments or codicils of wills formerly or heretofore made by me." The first of these was on a separate sheet of paper, the second on what appears to have been a wrapper, and the third on the back of a will executed in 1839. They are all posterior in date to the will propounded for proof. They express, as strongly as anything can, a determination to rescind every instrument of a testamentary character ever executed by the testator; and they express this repeatedly, showing a continued and earnest intention to revoke. They show that the testator supposed the mere writing and subscribing them was sufficient to constitute a present operative act of revocation, and that his will executed in 1840, was not conformable to his subsequent wishes. But notwithstanding this mistaken supposition, and this undeniable evidence of an intention to revoke all wills, the law must govern, though the rules adopted for wise and salutary purposes may seem hard in this particular case. The statute is just as rigid on the subject of written revocations as in regard to the execution of wills. A revocation in writing, to be valid, must be " executed with the same formalities with which the will itself was required by law to be executed." The testator might have revoked by burning, tearing, cancelling, obliterating or destroying; but he selected the mode of revocation by writing, and has failed in accomplishing his object from want of the necessary formalities. What would be the effect of a written declaration of revocation upon an executed will—whether it could be regarded as a present attempt at *cancellation*—it is not necessary to consider; for the will upon which one of these revocations was written is anterior in date to the one propounded. I see no room, therefore, for any argument on the subject: the terms of the statute are clear and unequivocal; the testator has adopted a manner of revocation in which he has failed to comply with the law, and these informal acts have no legal validity. The will must, therefore, be decreed to have been duly proved.